IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LESLIE GREER § | |
| § Plaintiff § | CIVIL ACTION NO.3-08cv-160-M |
| § | |
| v. § | Complaint for Discrimination Under |
| § | the ADA and the Rehabilitation Act |
| RICHARDSON INDEPENDENT § | |
| SCHOOL DISTRICT § | JURY TRIAL |
| Defendant § | |
| § | |

## *PLAINTIFF'S SECOND AMENDED COMPLAINT*

### *INTRODUCTION*

1.      This action arises under Title II of the Americans with Disabilities Act,[1] and the Rehabilitation Act of 1973, as amended.[2] Leslie Greer is an individual with a mobility impairment disability.  Plaintiff claims herein that, by reason of her disability, the Plaintiff is being excluded from participation in or being denied the benefits of the services, programs, or activities of and/or being subjected to discrimination by the Richardson Independent School District ("RISD") at Berkner High School Stadium off Plano Road in Richardson, Texas (the "Stadium").

2.      Plaintiff seeks a permanent injunction to enjoin the Defendant from engaging in these unlawful practices and seeks the removal of the architectural barriers at the Stadium that discriminate against individuals with mobility impairment disabilities.  Further, Plaintiff

---

[1] 42 U.S.C. § 12101 et seq., (the "ADA").
[2] 29 U.S.C. §794 and §794a (the "Rehabilitation Act").

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

seeks declaratory relief, damages for violation of her civil rights, and her attorney's fees and costs of litigation.

## JURISDICTION

3.      This Court has jurisdiction over the federal claims brought in this action under 28 U.S.C. §1331, 42 U.S.C. §3613, and 42 U.S.C. §12188 and supplemental jurisdiction over any state claims under 28 U.S.C. §1367.

## PARTIES

4.      Plaintiff Leslie Greer is an "otherwise qualified individual with a disability" within the meaning of Title II of the ADA and the Rehabilitation Act, in that she has a physical impairment that substantially limits one or more of her major life activities. She is unable to walk and uses a wheelchair for purposes of mobility. Her son attends Allen High School. She tries to attend events in which he participates along with other events in the area that are of interest to her. When she attended his football game held at Berkner High School in Richardson, Texas in October of 2007 she could not participate in the activities and programs at the Stadium in the same way as the able bodied parents because the Stadium has severe architectural barriers.

5.      Defendant, Richardson Independent School District ("RISD"), is a local governmental agency of the State of Texas that conducts programs or activities receiving Federal financial assistance as defined by the Rehabilitation Act,[3] and a public entity as defined by Title II of the ADA. Berkner High School and the Stadium are part of the RISD.

---

[3] 29 U.S.C. §794.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

                                                                                   Page 2 of 15

Since 1973 cities and townships of the State of Texas have accepted federal funding on the condition that they not discriminate on the basis of disability in providing access to their benefits and programs. For more than 30 years RISD has had experience in the requirements of Section 504 of the Rehabilitation Act of 1973 as that law has developed. RISD has been served and has answered in this case.

## BACKGROUND

6. On July 26, 1990, the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.,* the most comprehensive civil rights advancement for persons with disabilities ever to be enacted by the United States Congress, was signed into law. The Preamble of the ADA states its purpose.

> "An Act: To establish a clear and comprehensive prohibition of discrimination on the basis of disability."

7. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[4]

8. Congress provided that, "Not later than 1 year after the date of enactment of this Act, the Attorney General shall promulgate regulations in an accessible format that implement this

---

[4] 42 U.S.C. §12132.

subtitle."[5] Acting on this authority, the Department of Justice developed implementing regulations – the Americans with Disabilities Act Accessibility Guidelines.[6]

9.  When proscribing discrimination in Title II of the ADA on the basis of disability by public entities,[4] Congress included <u>any</u> "other instrumentality of ...States or local government"[5] in its definition of "entity". The prohibition against discrimination therefore applies to anything a public entity does, even if carried out by private contractors.[6]

10. The Rehabilitation Act provides "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[7]

11. Under § 504 of the Rehabilitation Act, "the term 'program or activity' means all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government."[8]

12. Discrimination under the Rehabilitation Act is essentially the same as discrimination under Title II of the ADA, applicable to a state agency or program, with the additional

---

[5] 42 U.S.C. §12134(a).

[6] 28 C.F.R. Part 36, Appendix A (the "ADAAG").
[7] 42 U.S.C. § 12132.

[8] 42 U.S.C. § 12115(1)(B).

[9] *See* 28 C.F.R. § 35.102 ("All governmental activities of public entities are covered, even if they are carried out by contractors.")

[10] 29 U.S.C. §794.

[11] 29 U.S.C. § 794(b).

requirement that the program or activity of the state agency receive Federal financial assistance.[9] Section 505 of the Rehabilitation Act incorporates the remedies, rights, and procedures set forth in Title VI of the Civil Rights Act of 1964 for violations of § 504 of the Rehabilitation Act.[10]

13. Federal regulations define "facility" as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."[11]

## *FACTS*

14. Ms. Greer's son attends Allen High School. The Stadium in Richardson is the general purpose outdoor stadium at Berkner High School where certain football games, and other events are held. The Stadium is a standard outdoor bench seating stadium that most anyone is familiar with in Texas. RISD has maintained throughout this litigation that the Stadium is an unmodified 1960's era stadium. It maintains that this unmodified stadium, as is, provides full program access. Inexplicably, at the same time that it claims the Stadium is unmodified, RISD maintains that work has been done to the Stadium entrance and ticket booth including the addition of a curb cut at the front serving two accessible parking spaces. Further, some of the items in

---

[12]*Pace v. Bogalusa City School Bd.,* 403 F.3d 272, 287 (5th Cir. 2005).; *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000) ("language of Title II generally tracks the language of Section 504 . . . and Congress' intent was that Title II . . . work in the same manner as Section 504"); see also 42 U.S.C. § 12133 (the "remedies, procedures, and rights" of Title II of the ADA are the same as those set forth in the Rehabilitation Act).

[13]29 U.S.C. § 794a(a)(2).

[14]28 C.F.R. § 35.104.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

the Stadium, such as the grab bars in the restroom are almost certainly, modifications that have been made since the construction and therefore must comply with new construction standards.

15. The following is a partial list of the architectural barriers that exist at the Stadium. These barriers clearly prevent access to the benefits and programs at the Stadium and therefore prevent program access.

a. The Stadium has no accessible route to the public sidewalk. A sidewalk runs along side the parking lot to the Stadium. RISD has constructed a ramp, apparently fairly recently, from that sidewalk into the parking lot that serves the Stadium. Presumably that ramp is part of the route to the front gate of the Stadium from the sidewalk. If it was built in the last 15 years, that ramp must comply with the ADAAG new construction standards. It does not comply for several reasons. One of them is because the ramp is too steep. This ramp from the sidewalk also "serves" two accessible parking spaces located in the parking lot that serve the Stadium. There is no accessible route to any location at the stadium from those two parking spaces.

b. RISD provides a total of two "accessible" parking spaces on an "accessible" route into the Stadium. There are hundreds of parking spaces in the parking lot serving the Stadium. There is seating in the stands for hundreds of individuals. Two accessible parking spaces is not sufficient to provide program access at a stadium the size of Berkner.

c. The curb cut from the accessible parking provided is part of the new construction modifications that RISD claims to have done to the "unmodified" Stadium. The curb cut from the parking does not comply with the new construction standards.

d. Once inside the Stadium there is only one route to the concession stands and to the restrooms. That route runs behind the public seating which is located in raised bleachers. The route to the restrooms and to the concession stands is not accessible. It has cross slopes and running slopes that exceed the maximum allowed. Therefore there is no accessible route to the concession stand or to the restrooms from the front gate.

e. The public seating is all elevated and requires that a patron climb stairs to get to it. Therefore there is no public seating that is accessible. RISD claims to provide alternate accessible seating areas. None of these are marked as seating areas. These alternate seating areas are simply unmarked parts of the unmodified Stadium. There is no indication at all at the Stadium that these "areas" are "seating" areas. There are no seats in any of the alternate seating areas. There are no signs. Two of the alleged alternate seating areas are behind a fence on either side of the public seating. When "seated" in either of these areas a patron in a wheelchair must view any activity on the field by looking through the fence. Seating that requires a patron to view the activity through a fence is not equivalent in quality to seating from a comparable distance that does not require a patron to view the activity through a fence.

      RISD also claims to provide an alternate seating area on a concrete area just inside the fence by the public seating. That area is not flat and level. That area is not an accessible area. Further, due to cross slopes and running slopes there is no accessible route to this area inside the fence. RISD claims to provide accessible seating on the track surface. The track surface is not an accessible surface. Upon information and belief the track surface has been replaced within the last 15 years. Therefore if it is being used by RISD a designated accessible seating area it must comply with new construction standards for an accessible viewing area. It does not. Further, even if the track did comply, there is no accessible route onto the track from the front gate.

f.      There is not an accessible entrance to the women's restroom. The entrance area is not flat and level as required.

g.      In addition to the areas just set out, RISD has failed to correct and or to provide access in many other ways that would have cost virtually nothing. Once inside the women's restroom the toilet paper dispenser is mounted more than a full foot beyond what would be an accessible reach range, such mounting is inaccessible. The grab bars are neither the proper length nor are they mounted correctly. The rear grab bar is only 24 inches. The minimum is 36 inches. RISD has mounted the mirror too high, They mounted the clothe's hook too high. The light switches are too high and the concession stand counter is too high.

16. The following is a summary of the access issues at the Stadium that a disabled woman similar to Ms. Greer can face when trying to attend a program. A disabled patron has no way to get to the stadium from the public sidewalk if they attend from the neighborhood or choose to leave the Stadium by the sidewalks. There is not a sufficient number of accessible parking spaces provided. If she can get a parking space there is not an accessible entrance to the Stadium due to the curb cut and the surface. Once inside there is not an accessible route to the public seating because it is all up a flight of stairs. There is not an accessible route to the concession stand. Once at the concession stand the counter is mounted at an inaccessible level. There is not an accessible route to the restrooms. Once at the restroom there is not an accessible entrance to the ladies room. Once inside the light switch is not accessible. Once the light is on there is not an accessible hook to hang her coat on in the stall. Once she hangs her coat there are not accessible handrails to transfer to the seat. Once transferred , the paper is not accessible. When finished the paper towel dispenser is not accessible and neither is the mirror. When she leaves the restroom there is no accessible route to an alternate accessible seating area. Once at an alternate seating area she must either view the program through the fence, alone, or sit on an inaccessible surface, alone. None of this is surprising, since the Stadium has never been modified to provide access. But despite all of these issues RISD nonetheless claims that it is providing full program access at Berkner, as is.

---

[18] 42 USC §12132.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

17.     None of this even addresses the fact that the alternate accessible seating areas that RISD even claims to provide, clearly and undeniably isolate and segregate the disabled from the general public.  Thus denying them the opportunity to participate in one of most important parts of the activity, namely sitting with other fans and friends to watch, discuss and enjoy the game.  They are instead shuffled off down and inaccessible route to sit alone behind a fence or on a non-accessible surface, where, at best, other people would have to bring their own chairs to sit with them.  This is not access to the programs and activities as contemplated by the laws.

18.     RISD receives Federal financial assistance.

19.     RISD does not comply with the ADA, Title II requirements because it fails to provide proper access to sufficient parking, or access routes into the Stadium, the public seating, the concession stand or the restrooms at the Stadium despite having had 17 years to do so.  By failing to do so RISD discriminates against Ms. Greer and denies Ms. Greer program access and the ability to participate in the programs, activities and or benefits offered at the Stadium in the same manner that the non-disabled can.

20.     Upon each visit Ms. Greer will encounter the architectural barriers at the Stadium, and despite this will continue to attend events at the Stadium.

21.     As a result of the Defendant's conduct and in order to pursue this matter Plaintiff has retained attorneys that are very familiar with ADA litigation, including having been appointed class counsel on several occasions to represent the mobility impaired individuals of Texas.  The Plaintiff has agreed to pay these attorneys, whose names appear on this

Compliant, a reasonable fee. Pursuant to her statutory rights, Ms. Greer will seek to recover her fees and any costs in this litigation from the Defendant if she is the prevailing party in this case.

### Count 1
### (ADA, Title II - Disability Discrimination)

22. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[6]

23. The regulations implementing the Americans with Disabilities Act provide that it is discriminatory to deny a person with a disability the right to participate in or benefit from the aid, benefit, or service provided by a public entity.[7]

24. All Governmental entities were given years to come into compliance with the ADA Title II requirements. RISD clearly did not bother to do so at the Stadium. In fact it has alleged specifically that it has not modified the Stadium. By failing to come into compliance with the ADA requirements to provide access to the activities, programs and benefits offered at the Stadium, RISD has denied the benefits of the services, programs or activities of the RISD program to Ms. Greer and the Defendant has subjected and continues to subject Ms. Greer to discrimination on the basis of her disability.

---

[19] 28 CFR §35.130 (b)(1)(I).

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

25.     As a direct and proximate result of the Defendant's violation of Plaintiff's civil rights under the ADA, Ms. Greer has suffered inconvenience, embarrassment, humiliation, emotional distress, along with the indignity and stigma of discrimination.

## Count 2
## ADA - Improper Alterations

26.     It appears that parts of the Stadium facility have been modified after January of 1992.  In those cases any new construction or alteration shall comply with the new construction requirements of the ADAAG.  It appears that many were not.  Some of the items that appear to be modifications that must meet the new construction guidelines are, the ramp to the parking lot and parking adjacent to the sidewalk, the curb cut into the main gate, the grab bars in the restroom and the track surface that is allegedly an accessible seating area.  These items clearly "affect or could affect the usability of the building or facility or any part thereof.".

27.      By failing to make modifications to the Stadium facility in compliance with the new construction guidelines RISD has violated the law.  RISD therefore does not provide access to the activities, programs and benefits offered at the Stadium to Ms. Greer in the same fashion and under the same terms as required by the law for non-disabled individuals and as a result the Defendant has subjected and continues to subject Ms. Greer to discrimination on the basis of her disability.

## Count 3
### (Rehabilitation Act - Disability Discrimination)

28.     The Rehabilitation Act of 1973 provides "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[8]

29.     By failing to provide access at the Stadium to the activities and benefits as set out in this Complaint the Defendant has excluded Ms Greer from, and or denied Ms. Greer the benefit of the programs and activities that receive Federal financial assistance and therefore subjected and continues to subject Plaintiff to discrimination on the basis of disability under the Rehabilitation Act of 1973.

30.     As a direct and proximate result of the Defendant's violation of Plaintiff's civil rights under the Rehabilitation Act of 1973, Ms. Greer has suffered inconvenience, embarrassment, humiliation, emotional distress, the indignity and stigma of discrimination.

### *REQUEST FOR RELIEF*

Plaintiff respectfully prays that the Court enter an order granting the following relief.

---

[20] 29 USC §794.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**Page 13 of 15**

31.     An order directing Defendant to remove the architectural barriers barring Plaintiff from participating in the activities and programs offered at the Stadium as required by the ADA.

32.     An order directing Defendant to remove the architectural barriers barring Plaintiff from participating in the activities and programs offered at the Stadium as required by the Rehabilitation Act.

33.     Entry of money judgment against the Defendant, awarding Ms. Greer nominal damages for the violation of her civil liberties in the amount of $100.00.

34.     An award to Plaintiff for of all attorney's fees, including litigation expenses and all costs; and;

35.     An award to Plaintiff for all other relief at law and in equity which the Court deems appropriate.

Respectfully submitted July 10, 2009 by,


/s/Palmer D. Bailey
**Mr. Palmer D. Bailey**
Bar Card No. 01533400
Law Office of Palmer Bailey, *A Professional Corporation*
16633 Dallas Parkway, Suite 600
Addison, TX 75001
Tel. 972.588.1863
Fax. 972.588.1801
Inlight226@aol.com


**KENNETH D. CARDEN**
Bar Card No. 03787300
The Carden Law Office
1409 South Lamar # 601
Dallas, Texas 75220

Tel.  972.432.9990
Fax.  972.432.9119
carden@adalaw.com

**Attorneys for Plaintiff**

## *CERTIFICATE OF SERVICE*

A copy of this document was served on all counsel of record via the court's electronic filing system on this 10th day of July, 2009


/s/Palmer D. Bailey
Palmer D. Bailey